IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
hkrestaurants@outlook.com
THAT IS STORED AT PREMISES
CONTROLLED BY MICROSOFT
CORPORATION USA

Case No. ___24-mj-63-01-TSM____

**Filed Under Seal**

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Michael G. Nunley, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by Microsoft Corporation ("Microsoft"), an email provider headquartered at 1 Microsoft Way, Redmond, Washington. The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Microsoft to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the U.S. Department of Veterans Affairs ("VA"), Office of Inspector General ("OIG"), and have been since July of 2023. Prior to employment with VA-OIG, I was employed as a Special Agent with the Treasury Inspector General for Tax Administration ("TIGTA"), Immigration and Customs Enforcement, Homeland Security

Investigations ("ICE-HSI"), and the Department of Homeland Security ("DHS"), United States Secret Service ("USSS"). In preparation for this assignment, and as part of my continued education, I have successfully completed law enforcement and financial crimes focused training, including formal courses and training exercises. I have participated in many aspects of federal investigations including, but not limited to: subject, victim, and witness interviews; analysis of telephone and financial records; and assisting with the preparation and execution of arrest and/or search warrants. As a federal agent, I am authorized to investigate violations of the laws of the United States. As a law enforcement officer, I am authorized to execute warrants issued under the authority of the United States.

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1349 (Attempt to Commit Wire Fraud), and 18 U.S.C. § 1957 (Money Laundering) (together, the "Target Offenses") have been committed by Michael Kirouac ("Kirouac"). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### Background

6.      In response to the coronavirus (COVID-19) pandemic and economic crisis,

Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act.  The Act

was signed into law on March 27, 2020 and includes the Paycheck Protection Program (PPP).

According to the Small Business Administration (SBA) website, "the Paycheck Protection

Program is a loan designed to provide a direct incentive for small businesses to keep their

workers on the payroll.  SBA will forgive loans if all employees are kept on the payroll for eight

weeks and the money is used for payroll, rent, mortgage interest, or utilities."  The available

funds are meant to help workers by keeping them employed.

7.      In addition, the SBA opened its Economic Injury Disaster Loan (EIDL) program

to small businesses as a result of COVID-19.  The SBA website explains that the purpose of the

EIDL program is "To meet financial obligations and operating expenses that could have been

met had the disaster not occurred." The SBA also offered EIDL applicants Economic Injury

Disaster Grants (EIDG), which were "Advances" up to $10,000 businesses that met certain

criteria. Typically, the only upfront fee associated with EIDLs was a $100 fee for filing a lien on

the borrower's business assets.

8.      The SBA website specifically states that EIDL loans "can be used to meet normal

operating expenses and working capital, prepay or pay commercial debt and make payments on

federal business debt, rent, cost of goods sold, and payroll." Moreover, under the section "Use of

Loan Proceeds" in the Loan Authorization and Agreement in all EIDLs, the documents states

"borrower will use all the proceeds of this Loan solely as working capital to alleviate economic

injury caused by disaster[.]"

9.    The SBA also offered Restaurant Revitalization Fund (RRF) grants, which were designed "to provide funding to help restaurants and other eligible businesses keep their doors open." The program provided restaurants with funding equal to their pandemic-related revenue loss. Recipients were not required to repay the funding, "as long as funds were used for eligible uses no later than March 11, 2023."

10.    In 2023, VA-OIG initiated a proactive review of CARES Act data related to current VA employees. I reviewed data pertaining to Kirouac, a Rating Veterans Service Representative ("RVSR") with the VA in the Manchester, NH Regional Office. During the review, it was revealed that Kirouac obtained approximately $1,836,562 in CARES Act funds through a variety of business entities. The data revealed that Kirouac was potentially involved in obtaining CARES Act funds through the following entities:

- HK MANCHESTER, LLC d/b/a XO BISTRO
- HK LOUDON, LLC d/b/a MAIN STREET GRILL AND BAR
- HK HUDSON, LLC
- HK PELHAM, LLC

The following chart summarizes the amount of CARES Act funding obtained:

| Entity d/b/a | Loan/Grant No. | Date | RRF Grant | EIDG | EIDL | PPP Loan | Totals |
|---|---|---|---|---|---|---|---|
| **Main Street Grill & Bar** | | | | | | | |
| HK Loudon LLC | EIDLGT: 3300067008 | 4/14/2020 | | $10,000.00 | | | $10,000.00 |
| | SBA Application No.: 3300067008 / FAIN No.: 3437847202 | 4/24/2020 | | | $147,900.00 | | $147,900.00 |
| | EIDLGT: 3301558044 | 4/25/2020 | | $4,000.00 | | | $4,000.00 |
| | FAIN No.: 7853957208/Bar Harbor Bank & Trust Loan No.: 7853957208 | 4/28/2020 | | | | $65,000.00 | $65,000.00 |
| | FAIN No. 7887228903 | 5/13/2021 | $106,587.00 | | | | $106,587.00 |
| | FAIN No.: 5148118303/Bar Harbor Bank & Trust Loan No.: 5148118303 | 1/25/2021 | | | | $70,785.00 | $70,785.00 |
| | FAIN Loan No.: 2448949103 / SBA Application No.: 3324029079 (EIDL#2) | 12/8/2021 | | | $426,700.00 | | $426,700.00 |
| | **Totals Main Street Grill & Bar** | | $106,587.00 | $14,000.00 | $574,600.00 | $135,785.00 | $830,972.00 |
| | | | | | | | |
| **XO Bistro** | EIDLGT: 3300069262 | 4/10/2020 | | $10,000.00 | | | $10,000.00 |
| HK Manchester LLC | SBA Application No.: 3300069262 / FAIN No.: 3157837205 | 4/17/2020 | | | $108,000.00 | | $108,000.00 |
| | FAIN No.: 7868637209/Bar Harbor Bank & Trust Loan No.: 7868637209 | 4/28/2020 | | | | $61,500.00 | $61,500.00 |
| | FAIN No.: 6323068304/Bar Harbor Bank & Trust Loan No.: 6323068304 | 1/26/2021 | | | | $77,903.00 | $77,903.00 |
| | SBA Application No.: 3323694144 / FAIN No.: 1767769100 | 9/22/2021 | | | $321,000.00 | | $321,000.00 |
| | | | $0.00 | $10,000.00 | $429,000.00 | $139,403.00 | $578,403.00 |
| | | | | | | | |
| **Subway** | FAIN No.: 1186107307/Bar Harbor Bank & Trust Loan No.: 1186107307 | 4/28/2020 | | | | $18,900.00 | $18,900.00 |
| HK Hudson LLC | FAIN No.: 8060388302/Bar Harbor Bank & Trust Loan No.: 8060388302 | 1/29/2021 | | | | $28,787.00 | $28,787.00 |
| | FAIN No.: 3052999105 | 1/14/2022 | | | $260,500.00 | | $260,500.00 |
| | | | $0.00 | $0.00 | $260,500.00 | $47,687.00 | $308,187.00 |
| | | | | | | | |
| **Subway** | FAIN No.: 3445427205 | 4/24/2020 | | | $119,000.00 | | $119,000.00 |
| HK Pelham LLC | | | $0.00 | $0.00 | $119,000.00 | $0.00 | $119,000.00 |
| | | | | | | | |
| | **Grand Totals** | | $106,587.00 | $24,000.00 | $1,383,100.00 | $322,875.00 | $1,836,562.00 |

11.     The total amount of CARES Act funding obtained through entities controlled by Kirouac was $1,836,562. Some of these funds were diverted through bank accounts and later used by a different entity controlled by Kirouac to purchase the Angus Lea Golf Course. Kirouac used hkrestaurants@outlook.com to submit the loan applications and communicate with the SBA and various banks in furtherance of the loan and grant applications, as discussed below.

## HK MANCHESTER, LLC d/b/a XO BISTRO

12.     A review of the New Hampshire Secretary of State ("NHSOS") website revealed that HK MANCHESTER d/b/a XO Bistro (business ID: 821847) was a member managed, domestic limited liability company, with a principal office address of 827 Elm Street, Manchester, NH 03101. It was created on June 19, 2019. HK MANCHESTER's current status is "dissolved." A search of the NHSOS website revealed that 1846 Hospitality LLC now owns the trade name XO Bistro Manchester at the same address where the business was located. Kirouac was listed as the principal/member. The business e-mail listed on the NHSOS website was hkrestaurants@outlook.com (the Target Email).

13.     On or about March 30, 2020, Kirouac applied for an EIDL on behalf of HK MANCHESTER. In the Intake Application, Kirouac stated that HK MANCHESTER had an Employee Identification Number (EIN) of 84-2155087 and was located at 827 Elm Street, Manchester, NH 03101. The application used the Target Email. The Application Number assigned was 3300069262. The business phone number listed in the application was 603-831-2746, a phone number associated with Kirouac.   Kirouac was the first contact listed with a phone number of 603-831-2746 and the Target Email.  The second contact listed was Kyle Tyrrell, and the third contact listed was Daniel Kirouac [1].  The Target Email was also listed as the

---

[1] From a review of open source media and other databases, Daniel Kirouac is Michael Kirouac's brother.

email address for both Tyrrell and Daniel Kirouac. Bar Harbor Bank account no. ending in 2956 was listed as the account to receive the loan proceeds.

14.     According to SBA records, on April 9, 2020, HK MANCHESTER was approved for a $10,000 EIDG, which was disbursed the following day. On April 14, 2020, HK MANCHESTER was quoted a $108,000 EIDL. On April 17, 2020, Kirouac electronically signed the Loan Agreement and related documents. The DocuSign Certificate of Completion[2] bearing Kirouac's electronic signature showed he used the Target Email.[3] On or about April 20, 2020, HK MANCHESTER received EIDL loan proceeds in the amount of $108,000. The loan number assigned was 3157837205. According to the SBA, this loan is currently in default.

15.     On or about April 15, 2021, the SBA initiated a loan modification based on an increase request. On July 8, 2021, the SBA received an e-mail from "Mike KIROUAC" stating "we would like the max allowed under the new rules please! Thank you."

16.     On September 21, 2021, SBA notes state that due to a budget issue, the SBA was creating a new loan application number to process the EIDL loan modification (3323694144).

17.     According to the notes in SBA application number 3323694144, on September 16, 2021, the SBA e-mailed Kirouac at the Target Email to state that they were correcting an administrative issue and would be funding the HK MANCHESTER loan increase using application number 3323694144. After a review of the previous file, on September 16, 2021, HK MANCHESTER was recommended for approval for a modification, increasing the loan amount by $321,000.

---

[2] According to https://support.docusign.com, the DocuSign Certificate of Completion provides details about each signer on the document, including the signer's IP address and other identifying information, such as the e-mail address used by the signer.

[3] According to https://www.docusign.com/blog/how-does-docusign-esignature-work, "To sign a document using DocuSign eSignature, first you'll receive an email request from the person sending the document." Afterwards, "your electronically signed document is then emailed back to the sender."

18.     On or about September 22, 2021, Kirouac and the other listed owners of HK Manchester electronically signed the Loan Agreement and related documents. The DocuSign Certificate of Completion bearing Kirouac's electronic signature showed the use of the Target Email. On September 28, 2021, $321,000 in EIDL proceeds were deposited into the Bar Harbor account ending in -2956. According to the SBA, this loan is currently in liquidation.

19.     According to SBA notes, between September of 2021 and February of 2022, Kirouac e-mailed with the SBA on multiple occasions using the Target Email.  Kirouac attempted to increase his EIDL loan modification to $2,000,000. The additional increase was never approved.

20.     In addition to the above communications, there were other e-mails between Kirouac (using the Target Email) and the SBA regarding XO BISTRO's debt, and subsequent closure and sale.

**Use of the Target Email to Purchase the Angus Lea Golf Course**

21.     During a review of HK MANCHESTER's Bar Harbor account ending -2956, I observed that on November 18, 2021, there was an in-person transfer of $290,000 to another Bar Harbor account ending in -3198.  The account ending -3198 is the operating account for HK LOUDON, LLC, another restaurant owned and operated by Kirouac. At least some of the $290,000 was directly traceable to the $321,000 SBA EIDL modification that HK MANCHESTER received on September 28, 2021. Using EIDL funds intended for one business to support another business violates EIDL terms.  Approximately two weeks later, on November 30, 2021, there was a $684,707.52 wire transfer from the Bar Harbor account ending -3198 that was used to purchase the Angus Lea Golf Course.  Using EIDL funds to purchase a golf course also violates the terms of an EIDL.

22.     Bar Harbor also provided a copy of an e-mail from Kirouac using the Target Email dated November 30, 2021, which requested a bank employee transfer $11,000 from the HK MANCHESTER account to the HK LOUDON operating account. KIROUAC further stated in the e-mail that "I will be coming in today to do a wire transfer. We need to wire $684,707.52." The beneficiary's information was "Shaheen & Gordon PA NH IOLTA."  A subpoena response from the previous Angus Lea Golf Course owner confirmed Shaheen & Gordon represented Kirouac in the sale of the golf course.

### HK LOUDON, LLC d/b/a MAIN STREET GRILL & BAR

23.     A review of the NHSOS website revealed that HK LOUDON (business ID: 802007) is a member managed, domestic limited liability company, with a principal office address of 32 Main Street, Pittsfield, NH 03263. It was created on August 27, 2018. HK LOUDON's current status is "not in good standing." Kirouac was listed as the principal/member. The Target Email was the business email listed on the NHSOS website. Per e-mails exchanged between Kirouac and the SBA, this business closed on January 9, 2023.

24.     On or about March 30, 2020, Kirouac applied for an EIDL on behalf of HK LOUDON, LLC. In the Intake Application, Kirouac stated that HK LOUDON (EIN: 83-1854432) was located at 32 Main Street, Pittsfield, NH 03263. The application listed the Target Email as the business e-mail address. The Application Number assigned was 3300067008. The business phone number listed in the application was 603-831-2746.  Kirouac was listed as Owner 1, Kyle Tyrrell was listed as Owner 2, and Seth Hallett was listed as Owner 3.  Kirouac listed the Bar Harbor bank account ending -3198 as the account to receive the loan proceeds.

25.     According to SBA notes, on April 13, 2020, HK LOUDON was approved for a $10,000 EIDG. On April 14, 2020, HK LOUDON was quoted an EIDL for $147,900. On April

22, 2020, Kirouac electronically signed the Loan Agreement and related documents. The DocuSign Certificate of Completion bearing his electronic signature again listed the Target Email. On April 24, 2020, $147,800 in EIDL proceeds were deposited in the Bar Harbor account ending -3198.  The loan number assigned was 3437847202.

26.     According to SBA notes, on June 15, 2021, the SBA initiated a loan modification based on an increase request. On August 10, 2021, a loan modification letter was processed by the SBA. That same day, Kirouac and Hallett electronically signed an Amended Loan Agreement and related documents.

27.     SBA notes show that Tyrrell was unable to sign the Amended Loan Agreement because of an issue with his email address.  On October 13, 2021, Kirouac used the Target Email to correspond with the SBA to obtain loan approval.

28.     On October 27, 2021, the SBA received a Congressional Inquiry from Michele Cota, Special Assistant for Policy & Projects Office of U.S. Senator Jeanne Shaheen. The inquiry requested the SBA to investigate the e-mail issue preventing HK LOUDON from closing on the loan.  The SBA notes indicate Kirouac had emailed Cota on October 20, 2021, requesting assistance.

29.     On October 28, 2021, Kirouac sent the SBA an email from the Target Email the stating "we just need final documents emailed for signature to close on this much needed loan. Is there anyone we can reach out to get this email sent?? It's been approved for months!"

30.     The SBA created a new loan number to resolve the issue. According to SBA notes, on November 10, 2021, the SBA e-mailed Kirouac to state that they were correcting an administrative issue and would be funding the HK LOUDON loan increase using application number 3324029079.

31.    On November 14, 2021, Kirouac, Tyrrell, and Hallett electronically signed a Loan Agreement and related documents for the EIDL loan modification in the amount of $352,100 (accounting for the $100 fee). The DocuSign Certificate of Completion bearing Kirouac's electronic signature listed the Target Email as his email address.  On November 18, 2021, $352,000 in EIDL funds were deposited in HK LOUDON's Bar Harbor account ending -3198.

32.    On November 21, 2021, Kirouac emailed the SBA requesting a further increase to the EIDL.  The request was approved.  On December 8, 2021, Kirouac, Tyrrell, and Hallett electronically signed an EIDL loan modification increasing the $352,100 EIDL to $426,700. The DocuSign Certificate of Completion bearing Kirouac's electronic signature again listed the Target Email as his email.  On December 14, 2021, the SBA deposited $74,600 in additional EIDL loan modification funds into HK LOUDON's Bar Harbor account ending -3198.

33.    As previously discussed, on November 18, 2021, the same day $352,000 in EIDL funds entered the Bar Harbor account ending -3198, Kirouac transferred $290,000 into that same account from the account ending -2956 belonging to HK MANCHESTER.  Twelve days later, Kirouac wired $684,707.52 from the account ending -3198 to pay for the Angus Lea Golf Course.  It thus appears that Kirouac improperly used proceeds from both the HK MANCHESTER and HK LOUDON EIDLs to purchase the golf course. f

34.    According to additional SBA file notes, HK LOUDON ceased operations on January 9, 2023.

### Kirouac's Discussions  About Purchasing the Angus Lea Golf Course

35.    Pursuant to VA policy and procedure, VA employees have no expectation of privacy for activity conducted on the VA network. While reviewing Kirouac's government-

issued profile and e-mail account, I observed that Kirouac discussed the purchase of the golf course in e-mails and chat messages with other VA employees.

36.     During an e-mail exchange on July 14, 2021, Kirouac stated to VA employee Bruce Laureiro, "waiting on SBA $$ to see if we can grab this golf course and open second location for restaurant so we'll see how next few weeks go."

37.     In a chat with VA employee Tim Crouch on October 13, 2021, Crouch asked Kirouac about the golf course and Kirouac stated: "we should be getting our SBA money soon though so that should let us get the thing."

38.     In another chat on November 1, 2021, Laureiro asks Kirouac if he is still buying the golf course. Kirouac states that he is "still on schedule to close on 12/1," the date that he purchased the Angus Lea Golf Course. Kirouac also stated, "wating [sic] on final SBA loan money to close."

39.     Continuing on November 12, 2021, I observed a chat conversation between Kirouac and Crouch, approximately 18 days before the golf course purchase. Crouch asked Kirouac about the golf course purchase and Kirouac stated: "just waiting on sba money. . . yeah hopefully we get a final email today and money is 5 days after then we can close…then get the big loans."

40.     On November 15, 2021, approximately 15 days before the golf course purchase. Kirouac stated to Crouch in a chat conversation, "we got loan approved for golf course funding. Should close next week or week after." From a review of HK LOUDON's EIDL agreement (Application #: 3324029079), Kirouac executed the EIDL agreement the day before sending this chat message to Crouch.

**HK HUDSON, LLC**

41.    A review of the NHSOS website revealed that HK HUDSON (business ID: 809943) is a member managed, domestic limited liability company, with a principal office address of 77 Lowell Road, Hudson, NH 03105. It was created on December 28, 2018. HK HUDSON's current status is "dissolved." Kirouac was listed as the principal/member. The Target Email was listed as the business e-mail. According to documents received from the current owner, Kirouac sold this restaurant on December 30, 2021.

42.    On or about March 31, 2020, Kirouac applied for an EIDL on behalf of HK HUDSON. Kirouac stated that HK HUDSON (EIN: 83-3183692) was located at 77 Lowell Road, Hudson, NH 03051.  HK HUDSON appears to have been a Subway franchise.  The application used the Target Email.  The Application Number assigned was 3300543379. The business phone number listed in the application was 603-831-2746.   Kirouac was listed as the primary contact and 50% owner.  The Target Email and phone number ending -2746 were also listed as Kirouac's contact information.  Citizens Bank account ending -4550 was listed as the account to receive the loan proceeds.

43.     On April 18, 2020, the SBA sent Kirouac an initial declination letter for failure to verify information. According to SBA file notes, on or about July 11, 2020, Kirouac applied to reconsider the denial.  Between July 11, 2020 and September 27, 2021, the SBA worked through the verification process, requesting follow up documentation from Kirouac.

44.    On December 13, 2021, the SBA received a Congressional Inquiry regarding HK HUDSON's EIDL application, indicating that Kirouac or someone else acting on HK HUDSON's behalf reached out to a member of Congress. On December 17, 2021, the SBA reconsideration review team approved an EIDL for HK HUDSON.

45.      On January 14, 2022, HK HUDSON's Loan Agreement and related documents were electronically signed by Kirouac and co-owner Seth Hallett.  The loan was for $260,500. The DocuSign Certificate of Completion bearing Kirouac's electronic signature again listed the Target Email.  The SBA Loan Number assigned for this EIDL was 3052999105.

46.      On January 10, 2024, I conducted a site visit at 77 Lowell Road, Hudson, NH 03051.  This is the address of a Subway franchise.  During the visit, I observed that GREEN BELLY, LLC was now the owner of this location.

47.      In response to a subpoena, GREEN BELLY provided me with a copy of sales documents pertaining to their purchase of the franchise.  Those documents show that on or about December 30, 2021, Kirouac and Hallett sold the HK HUDSON Subway franchise to GREEN BELLY, approximately two weeks before signing the EIDL agreement for the same business.

48.      Documents provided by GREEN BELLY further indicate Kirouac was actively engaged in negotiations to sell HK HUDSON in the months leading up to him obtaining the EIDL funds.

49.      Of note, a review of the HK HUDSON EIDL loan file showed that on October 20, 2021, the same day GREEN BELLY signed an Agreement of Sale for the HK HUDSON Subway franchise, Kirouac sent an e-mail to the SBA from the Target Email stating: "Looking for an update on this request. Our restaurant is in desperate need of these funds. Thank you!"

50.      The SBA file further revealed that on October 27, 2021, Kirouac used the Target Email to send the SBA a message stating "Is there any movement on this reconsideration? We are drowning and need this loan asap. I've had to submit the same form 5 times now."  Kirouac sent additional follow-up emails to the SBA from the Target Email but never mentioned there was a pending sale of the HK HUDSON business.

51.     Also contained in the SBA loan file was a HK HUDSON "Resolution and Certification" signed by Kirouac attesting that the company officers (Kirouac and Hallett) had approved the $260,500 EIDL.  This document was signed on January 11, 2022, almost two weeks after the Subway franchise was sold to GREEN BELLY.

52.     During the file review, I also observed an SBA "Application for Hardship Accommodation" dated November 18, 2023. It appears to be signed by Kirouac on behalf of himself and Hallett. Question Number 4 states: "Provide a Detailed Description of the Need for a Hardship Accommodation:" The answer was "Subway location has been closed and transferred back to Subway headquarters." Based on the above, this was a false statement.

53.     Finally, a review of the use of the HK HUDSON EIDL loan proceeds is ongoing. A preliminary review of the Citizens Bank account ending -4550 revealed that in the 10 weeks after the EIDL proceeds were deposited, approximately $145,000 was withdrawn or electronically transferred to accounts that do not appear to be associated with HK HUDSON. Moreover, because Kirouac no longer owned the subway franchise, these funds were likely used for other purposes in violation of the EIDL agreement terms.

### HK PELHAM, LLC

54.     A review of the NHSOS website revealed that HK PELHAM (business ID: 799880) is a member managed, domestic limited liability company, with a principal office address of 391 North Road, Epsom, NH 03234. It was created on July 25, 2018. HK PELHAM's current status is "dissolved." Kirouac was listed as the principal/member. The Target Email was listed as the business email address. According to documents received from the current owner, Kirouac sold this Subway restaurant on November 13, 2020.

55.    On or about March 31, 2020, Kirouac applied for a SBA EIDL on behalf of HK PELHAM, LLC.  Kirouac stated that HK PELHAM (EIN: 83-1432528) was located at 150 Bridge Street, Suite 3, Pelham, NH 03076.  Under "Trade Name," Kirouac identified HK PELHAM as a Subway.  The application listed the Target Email as the business email. The Application Number assigned was 3300539628. The business phone number listed in the application was 603-831-2746.   Kirouac and Seth Hallett were listed as the owners, and Kirouac's listed email was the Target Email.  Citizens Bank account ending -2027 was listed as the account to receive the loan proceeds.

56.    SBA records indicated that on May 6, 2020, the Loan and Security Agreement was processed. Citizens records confirm $118,900 in EIDL proceeds were deposited in the account ending -2027 on May 8, 2020.  This was SBA Loan Number #3445427205.

57.    The HK PELHAM note was executed by Kirouac on or about May 6, 2020. The DocuSign Certificate of Completion bearing Kirouac's electronic signature again listed the Target Email.

58.    According to SBA notes, on October 26, 2020, the SBA spoke with Kirouac over the telephone regarding the submission of resolution and hazard insurance. There is no indication that Kirouac informed the SBA that he was in the process of selling the HK PELHAM Subway franchise.

59.    On October 26 and 27, 2020, Kirouac provided certain documents to the SBA. Of note, one of the documents, signed by Kirouac on October 27, 2020, stated that he and Hallett had discussed the EIDL loan "and agreed to all terms and conditions effective the date of loan issuance."  There was no mention of a pending sale of HK PELHAM.

60.     On February 16, 2022, SBA Paralegal Specialist Seop Kim attempted to call phone number 603-831-2746, and sent an e-mail to the Target Email, subject: HK PELHAM LLC (3300539268). In the e-mail, Kim requested HK PELHAM's physical and mailing address. Kim also requested additional documents, including a utility bill for the business. In response, it appears that KIROUAC sent a water bill for his personal residence, 3 Prospect Street, Boscawen, NH 03303.

61.     Continuing that same date, Kirouac used the Target Email to email Kim stating that any mail for HK PELHAM could be sent to "Mike Kirouac, 3 Prospect Street, Boscawen, NH 03303." At the bottom of the e-mail, KIROUAC wrote:

> Hk pelham business address was
> 150 bridge st ste c
> Pelham, nh 03076

62.     Other than the word "was," Kirouac made no statement to indicate that the Subway franchise had been sold on or about November 13, 2020.

63.     On January 4, 2024, I conducted a site visit of the HK PELHAM Subway restaurant at 150 Bridge Street, Suite C, Pelham, NH 03076 (the listed business address in the EIDL application). I observed that GREEN BELLY, LLC was now the owner of this Subway location. GREEN BELLY provided a copy of sales documents pertaining to the purchase of this franchise. The documents showed that on or about November 13, 2020, Kirouac and Hallett sold the franchise to GREEN BELLY.

64.     A review of KIROUAC's use of the HK PELHAM EIDL loan proceeds is ongoing. A preliminary review of the HK PELHAM Citizens Bank account ending -2027 revealed that on May 11, 2020, three days after receipt of the EIDL proceeds, there was a $28,948.10 debit from the account. The entry was titled "USAA.com paym[e]nt loan."

65.    USAA Bank documents show that on or about August 7, 2018, Kirouac applied for a personal loan with USAA (Application No. 0043680533/Loan No. 1104908312). The stated purpose of the loan was to "cover personal family or household expenses." The amount requested was $38,000. In response to the question "how will funds be used?" Kirouac's response was "Purchase Property." Kirouac was approved for the loan. A review of the loan Transaction Detail Report revealed that on May 8, 2020, the loan was paid off with a lump sum payment of $28,948.10, matching the transaction from HK PELHAM's operating account, and constituting improper use of EIDL funds.

66.    In general, an email that is sent to a Microsoft subscriber is stored in the subscriber's "mail box" on Microsoft servers until the subscriber deletes the email.  If the subscriber does not delete the message, the message can remain on Microsoft servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Microsoft's servers for a certain period of time.

### BACKGROUND CONCERNING EMAIL

67.    In my training and experience, I have learned that Microsoft provides a variety of on-line services, including electronic mail ("email") access, to the public.  Microsoft allows subscribers to obtain email accounts at the domain outlook.com, like the email account listed in Attachment A.  Subscribers obtain an account by registering with Microsoft.  During the registration process, Microsoft asks subscribers to provide basic personal information. Therefore, the computers of Microsoft are likely to contain stored electronic communications (including retrieved and unretrieved email for Microsoft subscribers) and information concerning subscribers and their use of Microsoft services, such as account access information, email transaction information, and account application information.  In my training and experience,

such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

68.    A Microsoft subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Microsoft. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

69.    In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

70.    In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage

of the account.  In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

71.    In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

72.    As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time.  Further, information maintained by the email provider can show how and when the account was accessed

or used.  For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner.  Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email).  Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## **CONCLUSION**

73.     Based on the forgoing, I request that the Court issue the proposed search warrant.

74.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Microsoft.  Because the warrant will be served on Microsoft, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

/s/ Michael Nunley
Michael Nunley
Special Agent
Department of Veteran's Affairs
Office of the Inspector General

Sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on April 5, 2024:

Honorable Talesha Saint-Marc
UNITED STATES MAGISTRATE JUDGE

## <u>ATTACHMENT A</u>

**Property to Be Searched**

This warrant applies to information associated with <u>hkrestaurants@outlook.com</u> that is stored at premises owned, maintained, controlled, or operated by Microsoft, a company headquartered at 1 Microsoft Way, Redmond, Washington.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Microsoft (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all emails associated with the account **from January 1, 2020 to present**, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

e.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

### Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1349 (Attempt to Commit Wire Fraud), and 18 U.S.C. § 1957 (Money Laundering), those violations involving Michael KIROUAC and occurring after January 1, 2020, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Evidence of KIROUAC's communications discussing obtaining CARES Act funds, communications between KIROUAC and others, including potential co-conspirators,  showing intent to withhold information from the SBA, evidence of illegal use of CARES Act funds, and evidence of intent to misuse CARES Act funds.

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC<br>RECORDS PURSUANT TO FEDERAL RULES OF<br>EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Microsoft, and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Microsoft. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Microsoft, and they were made by Microsoft as a regular practice; and

b.    such records were generated by Microsoft electronic process or system that produces an accurate result, to wit:

1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Microsoft in a manner to ensure that they are true duplicates of the original records; and

2.    the process or system is regularly verified by Microsoft, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                              Signature